# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

JIMMY DAVIS, individually and on behalf of JIKEM DAVIS,
WENDY MACK, individually and on behalf of ERNEST JEFFRIES, and
THE ESTATE OF JIMARIS DAVIS,

*Plaintiff/Appellants*,

v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON,

*Defendant/Appellee.*

———————————

Appeal From The United States District Court
For The Northern District Of Georgia
Case No. 1:20-cv-4916-JPB

———————————

## APPELLANTS' OPENING BRIEF

———————————

ZACK GREENAMYRE
Georgia Bar No. 293002
MITCHELL SHAPIRO GREENAMYRE & FUNT LLP
881 Piedmont Avenue
Atlanta, Georgia 30309
404-812-4747
zack@michtellshapiro.com

July 10, 2024

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and any other identifiable legal entities related to a party:

1.    BatesCarey LLP (law firm of counsel for Defendant/Appellee);

2.    Bey, John (counsel for Plaintiffs/Appellants);

3.    Bey & Associates LLC (law firm for counsel for Plaintiffs/Appellants);

4.    The Honorable Judge Boulee, J.P. (district court judge);

5.    Certain Underwriters at Lloyd's London (Defendant/Appellee);

6.    City of East Point (Plaintiff);

7.    Greenamyre, Zack (counsel for Plaintiff/Appellants);

8.    Koury, David (counsel for Defendant/Appellee);

9.    Lacy, Thomas W., Jr. (counsel for Plaintiff);

10.   MacKimm, Sarah (counsel for Defendant/Appellee);

11.     Mitchell Shapiro Greenamyre & Funt LLP (law firm for counsel for

Plaintiff/Appellants);

12.     Mozley Finlayson & Loggins LLP (law firm for counsel for Defend-

ant/Appellee);

13.     Rohrer, Adrian (counsel for Defendant/Appellee);

14.     Taylor, Wayne (counsel for Defendant/Appellee);

No publicly traded company or corporation has an interest in the outcome of this

case or appeal.

This 10th day of July, 2024.

**<u>Zack Greenamyre</u>**
Zack Greenamyre
Georgia Bar No. 293002

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff-Appellants do not request oral argument, but are eager to present argument should the Court or Defendant request.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement............C-1

Statement Regarding Oral Argument .....................................................................i

Table of Authorities................................................................................... iii

Statement of Subject-Matter and Appellate Jurisdiction......................................1

Statement of The Issues........................................................................................2

Statement of The Case..........................................................................................3

    **A.** ***Statement of Facts*** ...............................................................................3

        1. The chase and the crash ...............................................................3

        2. The insurance contract .................................................................4

    **B.** ***Procedural History*** ...........................................................................6

Summary of the Argument....................................................................................9

Argument and Citation of Authority ..................................................................13

  **I.** **EAST POINT WAIVED ITS SOVEREIGN IMMUNITY UP TO $1,800,000 FOR THE TORT PLAINTIFFS' CLAIMS** .....................13

    **A.** ***Recent developments in Georgia law concerning local government insurance contracts and sovereign immunity***.................................13

    **B.** ***The contract unambiguously provides coverage in the amount of $1,800,000 for the Tort Plaintiffs' claims*** ......................................17

    **C.** ***In the event of ambiguity, background law principles require construction in favor of coverage to the limits articulated in the policy*** ..............................................................................................22

    **D.** ***Regardless of Lloyd's indemnification obligations, East Point waived immunity up to $1,800,000*** ..................................................25

Conclusion..........................................................................................................26

Certificate of Compliance ..................................................................................27

Certificate of Service..........................................................................................28

# TABLE OF AUTHORITIES

## Federal Cases

*Govan v. City of McIntyre*,
   No. 5:16-CV-00503-TES, 2018 WL 3762997 (M.D. Ga. Aug. 8, 2018)........... 14

*Sutton v. Wal-Mart Stores East, LP*,
   64 F.4th 1166 (11th Cir. 2023) ........................................................................... 13

*Tims v. LGE Cmty. Credit Union*,
   935 F.3d 1228 (11th Cir. 2019) ......................................................................... 13

## State Cases

*Atlantic Specialty Ins. Co. v. City of College Park*,
   851 S.E.2d 189 (Ga. App. Ct. 2020) ......................................................... passim

*Atlantic Specialty Ins. Co. v. City of College Park*,
   869 S.E.2d 492 (Ga. 2022) ........................................................................ passim

*City of East Point v. Certain Underwriters at Lloyd's London, et al.*,
   No. 2020CV340458 (Fulton Super. Ct.) ............................................................. 7

*Davis, et al. v. Bolton, et al.*,
   18EV003023 (Fulton St. Ct.)................................................................ 3, 6, 7, 17

*Decision One Mortg. Co., LLC v. Victor Warren Properties, Inc.*,
   696 S.E.2d 145 (Ga. Ct. App. 2010) ................................................................. 25

*Gatto v. City of Statesboro*,
   834 S.E.2d 623 (Ga. Ct. App. 2019) ......................................................... passim

*Isdoll v. Scottsdale Ins. Co.*,
   466 S.E.2d 48 (Ga. Ct. App. 1995) ................................................................... 11

## Statutes and Rules

28 U.S.C. § 1291 ................................................................ 1

28 U.S.C. § 1332 ................................................................ 1

28 U.S.C. § 1653 ................................................................ 1

O.C.G.A. § 33-24-51 ................................................ 9, 10, 14

O.C.G.A. § 36-22-1 ................................................... 21

O.C.G.A. § 36-33-1 ..................................... 14, 18, 19, 22

O.C.G.A. § 36-33-5 ................................................... 21

O.C.G.A. § 36-92-2 ............................................ passim

O.C.G.A. § 40-6-6 ................................................... 3

## Treatises and Secondary Sources

Black's Law Dictionary (11th ed. 2019) ................................ 18

## **STATEMENT OF SUBJECT-MATTER**
## **AND APPELLATE JURISDICTION**

This Court has jurisdiction under 28 U.S.C. § 1291. This is a direct appeal from the district court's order granting Defendant Certain Underwriters at Lloyd's, London's motion for summary judgment. *See* Doc. 42. The district court entered judgment ordering and adjudging that the insurance policy at issue does not waive sovereign immunity beyond the $700,000 statutory limit. Doc. 43. Plaintiffs timely filed their notice of appeal on April 26, 2024. Doc. 44.

This Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, with the record as supplemented pursuant to 28 U.S.C. § 1653, for the reasons set forth in the parties' joint response to the jurisdictional question posed by this Court. *See* Joint Response to Jurisdictional Question (June 5, 2024).

## STATEMENT OF THE ISSUES

1.      The City of East Point purchased insurance coverage from Lloyd's covering "automobile liability." The insurance contract provides that the limit of such liability is $1,800,000. Did the district court err in determining that the contract provided only $700,000 in coverage?

## STATEMENT OF THE CASE

### A.    *Statement of Facts*

####    1.    The chase and the crash

In the underlying state court tort action, Jimmy Davis, individually and on behalf of his son, Jikem Davis; Wendy Mack, individually and on behalf of her son Ernest Jeffries; and The Estate of Jimaris Davis (collectively, the "Tort Plaintiffs") brought suit for injuries the family of five suffered in a high speed crash.

In the state suit, the Tort Plaintiffs have proffered expert evidence that East Point officials acted with reckless disregard for proper law enforcement procedures when they embarked upon and continued a police chase on June 27, 2016. *See generally Davis, et al. v. Bolton, et al.*, 18EV003023 (Fulton St. Ct.). Officers exceeded 100 miles per hour as they passed apartments, day care centers, a church, and various commercial businesses before the vehicle they pursued crashed into the Tort Plaintiff's vehicle that was stopped at a traffic light. In the moments immediately before the crash, the fleeing suspect was travelling 127 miles per hour. All the while, there was a helicopter with a visual on the fleeing suspect. This conduct gives rise to a state law tort claim against the City of East Point under O.C.G.A. § 40-6-6.

There were two adults and three children in the Tort Plaintiff's vehicle. One child died. The survivors' lives were forever changed. Regardless of the limits of

insurance or any liability defenses East Point may have in the state tort case, this much is clear: (1) any available insurance is grossly undercompensatory for the human suffering involved, and (2) the Tort Plaintiffs were powerless to avoid the harms they have suffered.

2.    <u>The insurance contract</u>

Lloyd's sold an insurance policy to the City of East Point in effect for bodily injuries suffered from automobile wrecks or law enforcement actions during the time from October 1, 2015 to October 1, 2016. Doc. 35-2; Policy No. PK1024115 (the "Policy").

"The Policy's Auto Liability Coverage Section contains an aggregate limit of $1.8 million." Doc. 33-4 (citing Doc. 1-1).

Section III of the Policy, which addresses Automobile Liability, provides, in relevant part:

> The Underwriters agree, subject to the policy limitations, terms, conditions, to indemnify the ASSURED for all sums which the ASSURED is obligated to pay by reason of the liability arising from the ownership, operation, maintenance or use of an AUTOMOBILE imposed upon the ASSURED by law or assumed by the ASSURED under contract or agreement, including non-owned and hired AUTOMOBILES, for damages direct or consequential, and expenses, all as more fully defined by the term ULTIMATE NET LOSS, arising out of any OCCURRENCE on account of BODILY INJURY or PERSONAL INJURY, suffered or alleged to have been suffered by any person(s) or organization(s) and/or PROPERTY DAMAGE, arising out of the ownership,

4

> operation, maintenance or use of any AUTOMOBILE, occurring during the PERIOD OF INSURANCE.

Doc. 33-2 at 15–16.

The defined terms OCCURRENCE and BODILY INJURY make clear that the Tort Plaintiffs' claims are covered losses.

The Policy contains an "Endorsement 10" which says that:

> It is understood and agreed that the ASSURED shall not waive, either in the adjustment of claims or in the defense of SUIT(S) against the ASSURED, any governmental immunity, of the ASSURED, unless Underwriters and the ASSURED mutually agree, in writing, to do so.

*Id*. at 16–17.

"SUIT(S)" from Endorsement 10 is capitalized because it is a defined term from the contract. The definition is as follows:

> SUIT means a civil proceeding in which injuries or damages are alleged. SUIT includes:
> (a) A arbitration proceeding in which such damages are claimed and to which the ASSURED must submit or does submit with or without the Underwriters' consent; or
> (b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the ASSURED submits with or without the Underwriters' consent.

Doc. 1-1 at 41.

Lloyd's sent East Point three reservation of rights letters. Doc. 33-4 ¶ 24.

The first one, in 2019, said nothing about a policy limit of anything other than

$1,800,000. *See* Doc. 1-1 at 116 ("The Policy's limit of liability for the Automobile Liability Coverage Section is $1,800,000 each OCCURRENCE, subject to a $200,000 SELF INSURED RETENTION.").

The second letter, for the first time, set out the theory that Lloyd's indemnification obligation was capped at $700,000 (subject to retention issues). Doc. 33-4 ¶ 32.

In response, East Point was surprised by Lloyd's coverage position. It believed that Lloyd's had failed to give it the benefits that it had bargained for, and it stated that it "expects" Lloyd's to make funds available to settle the Tort Plaintiffs' claims for $1,800,000. Doc. 1-1 at 137–40.

Lloyd's then wrote a third letter, doubling down on its position, Doc. 33-4 ¶ 37, which led to this declaratory judgment litigation.

### B.    *Procedural History*

The Tort Plaintiffs filed a lawsuit on June 26, 2018 in Fulton County State Court against East Point, several of its officers involved in the chase, and Ana Bolton who drove the pursued vehicle. Doc. 1-1, Ex. 2 at 114. Following motion practice, the individual officers were dismissed and the claims against the City and Bolton proceeded. *Id*. at 116. The state tort suit then proceeded through significant discovery. *See generally Davis, et al. v. Bolton, et al.*, 18EV003023 (Fulton St. Ct.).

Beginning in early 2020, it became apparent to the parties to that litigation that Lloyd's coverage position hindered resolution of that suit. The parties in the state tort suit moved for a stay of proceedings in that case to attempt to resolve the coverage issues so that the suit could, in turn, be resolved. *See Davis, et al. v. Bolton, et al.*, 18EV003023 (Fulton St. Ct. Apr. 6, 2020) (Joint Motion to Stay).

The coverage issue was not resolved, which led East Point to sue the Tort Plaintiffs and Lloyd's in a declaratory judgment action in Fulton County Superior Court on September 15, 2020. *See generally City of East Point v. Certain Underwriters at Lloyd's London, et al.*, No. 2020CV340458 (Fulton Super. Ct.). Lloyd's then removed the case to federal court, asking the district court to realign the parties to achieve diversity jurisdiction. *See* Doc. 1, Doc. 4.

Due to the pendency of litigation in *Atlantic Specialty Ins. Co. v. City of College Park* in the Georgia appellate courts, which raised potentially related issues, the parties jointly moved for stays of the litigation, *see* Doc. 17, 20, which the district court granted, *see* Docket Entry entry January 27, 2021; Doc. 22. The Georgia Court of Appeals rendered its decision, 851 S.E.2d 189 (Ga. App. Ct. 2020), which the Georgia Supreme Court then reversed. 869 S.E.2d 492 (Ga. 2022).

Back in federal court, Lloyd's filed a motion for summary judgment, Doc. 33, which East Point and the Tort Plaintiffs opposed, Doc. 35, Doc. 37. The district

court granted summary judgment in Lloyd's favor, Doc. 42, concluding that Endorsement 10 and O.C.G.A. § 36-92-2 had the effect of limiting coverage to $700,000. The Tort Plaintiffs, but not East Point, then filed a timely notice of appeal. Doc. 44.

On appeal, this Court posed a jurisdictional question. May 22, 2024. The parties jointly responded by supplementing the record on appeal to cure any deficiency in the record concerning diversity of citizenship. *See* Joint Response to Jurisdictional Statement (June 5, 2024).

On July 8, 2024, counsel for the Tort Plaintiffs discovered that he had made a calendaring error and that this brief was due on July 3, 2024. After consultation with opposing counsel and their review of the proposed motion, Lloyd's consented to the Tort Plaintiffs' motion to file a brief out of time on or before July 15, 2024. The Tort Plaintiffs then filed this brief and their appendix on July 10, 2024. Undersigned counsel deeply regrets his error and humbly requests that his clients not be prejudiced by his mistake.

## SUMMARY OF THE ARGUMENT

In *Atlantic Specialty Ins. Co. v. City of College Park*, 869 S.E.2d 492 (Ga. 2022), the Georgia Supreme Court reaffirmed the long-standing principles of the interpretation of insurance contracts under Georgia law. Where a contractual term is unambiguous, courts should give purpose to the "plain reading" of the terms at issue. *Id.* at 498. The Court broke no new ground: "The purchase of insurance providing coverage in excess of the automatic waiver limits, thus further waiving sovereign immunity, remains just as it was before 2002 – a decision left to the discretion of local government entities." *See also* O.C.G.A. § 33-24-51 (sovereign immunity for local government vehicles is waived, to the extent of coverage, by discretionary decision to purchase insurance); O.C.G.A. § 36-92-2 (minimum waiver of $700,000 for bodily injury to multiple persons; increased by insurance purchase).

The insurance language at issue in this case is not the same as the language at issue in *Atlantic Specialty*, despite Lloyd's best efforts to shoehorn it to fit. Endorsement 10 in Lloyd's insurance contract is just not equivalent to the language in *Atlantic Specialty*.

Endorsement 10 reads as follows:

> It is understood and agreed that the ASSURED shall not waive, either in the adjustment of claims or in the defense of SUIT(S) against the ASSURED, any governmental immunity, of the ASSURED, unless Underwriters and the

ASSURED mutually agree, in writing, to do so.

The terms of the insurance contract in *Atlantic Specialty* provided, first, that:

> We have no duty to pay damages . . . on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you.

The terms further provided that:

> This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any Insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments.

*Atlantic Specialty*, 896 SE.2d at 498–99.

*First*, the Tort Plaintiff's argue that the contract's terms clearly and unambiguously show that East Point purchased insurance with limits of $1,800,000. The contract says there is a limit of $1,800,000 that applies to automobile liability and law enforcement action. Unlike in *Atlantic Specialty*, there is no language whatsoever providing that the insurance contract itself does not act to waive immunity. There is no reference to state law or any explanation that the purchase of insurance does not waive sovereign immunity to the extent of purchase. Giving a "plain reading" to these terms, a Court should find that the contract, along with operation of O.C.G.A. § 33-24-51 and O.C.G.A. § 36-92-2, gives rise to a waiver of sovereign immunity for injuries resulting from this law enforcement caused automobile wreck in the amount of $1,800,000. East Point has

clearly not waived immunity in the "adjustment of claims" or in the defense of this "SUIT." Instead, it waived immunity by buying insurance.

*Second*, and in the alternative, if the Court does not believe that the contractual terms clearly do not evince any non-waiver of sovereign immunity from the purchase of insurance and operation of law (rather than via the adjustment of claims or defense of suits), the Tort Plaintiffs respectfully submit that the endorsement is at the very least ambiguous on this point. If there is ambiguity in the contract's terms, the Court must construe any ambiguity against the insurer and in favor of coverage. *Isdoll v. Scottsdale Ins. Co*., 466 S.E.2d 48, 50 (Ga. Ct. App. 1995). If two terms of an insurance contract are in conflict, "the provision most favorable to the insured will be applied." *Id.* at 50. There can be no doubt that Lloyd's provision is *more* ambiguous than the language in *Atlantic Specialty*.

*Third*, and again in the alternative, East Point has waived sovereign immunity up to $1,800,000 even if Lloyd's has no obligation to indemnify above $700,000, or at all. Lloyd's argued that East Point may have breached its contract by waiving sovereign immunity. Doc. 33-3 at 21–23. The Tort Plaintiffs adopted and incorporated that argument below and herein. Beyond Lloyd's argument, the Tort Plaintiffs assert that East Point knew that its purchase of insurance waived sovereign immunity up to $1,800,000 even if Lloyd's somehow did not.

The district court's contrary decision should be reversed and it should be ordered and adjudged that sovereign immunity has been waived in the amount of $1,800,000 for the Tort Plaintiffs' claims.

## ARGUMENT AND CITATION OF AUTHORITY

The standard of review is *de novo*. That is because this is an appeal from summary judgment, *see Sutton v. Wal-Mart Stores East, LP*, 64 F.4th 1166, 1168 (11th Cir. 2023), and because questions about contract interpretation, including determinations of whether terms are ambiguous, are reviewed *de novo*, *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019).

## I.   EAST POINT WAIVED ITS SOVEREIGN IMMUNITY UP TO $1,800,000 FOR THE TORT PLAINTIFFS' CLAIMS

### A.   *Background developments in Georgia law concerning local government insurance contracts and sovereign immunity*

In recent years, there has been significant litigation about Georgia's law surrounding the legal effect of municipalities' purchase of liability coverage. The net effect of this flux has been that the law "remains just as it was before 2002." *Atlantic Specialty Ins. Co. v. City of Coll. Park*, 869 S.E.2d 492, 498 (2022). Whether to waive sovereign immunity for auto torts above the minimum limits set by O.C.G.A. § 36-92-2 by purchasing insurance is "a decision left to the discretion of local government entities." *Id.* Waiver in excess of the minimum limits is accomplished by "purchas[ing] commercial liability insurance in an amount in excess of the waiver set forth [in § 36-92-2]." O.C.G.A. § 36-92-2(d)(3); *see also* O.C.G.A. § 33-24-51(b) ("Whenever a municipal corporation . . . shall purchase the insurance . . . . to provide liability coverage for the negligence of any duly

authorized officer, agent, servant, attorney, or employee in the performance of his or her official duties in an amount greater than the amount of immunity waived as in Code Section 36-92-2, its governmental immunity shall be waived to the extent of the amount of insurance so purchased.").

Prior to the Court of Appeals' 2019 decision in *Gatto v. City of Statesboro*, 834 S.E.2d 623 (Ga. Ct. App. 2019), the law was simple enough. O.C.G.A. § 36-92-2(d), O.C.G.A. § 33-24-51(b), and O.C.G.A. § 36-33-1(a) each provided that if a city elected to purchase insurance coverage for a given kind of claim, it waived sovereign immunity for that kind of claim, up to the limits of insurance. *See, e.g.*, *Govan v. City of McIntyre*, No. 5:16-CV-00503-TES, 2018 WL 3762997, at \*16 & n.170 (M.D. Ga. Aug. 8, 2018) (discussing interplay of purchase of insurance with waiver of sovereign immunity). Most Georgia cities elected to purchase insurance, and most of those that did so bought into the Georgia Interlocal Risk Management Agency ("GIRMA"). GIRMA wrote policies that did not contain any anti-waiver language. And GIRMA, usually though not always, took the position that the purchase of insurance resulted in a waiver of sovereign immunity to the extent of insurance. *See id.*

Things began to change with *Gatto*. That case involved an insurance policy written by Atlantic Specialty Insurance Company. Unlike the GIRMA policies, this

policy had unique language that presented questions of first impression. The

provision at issue read as follows:

> We have no duty to pay damages on your behalf under this
> policy unless the defenses of sovereign and governmental
> immunity are inapplicable to you. This policy and any
> coverages associated therewith does not constitute, nor
> reflect an intent by you, to waive or forego any defenses
> of sovereign and governmental immunity available to any
> Insured, whether based upon statute(s), common law or
> otherwise, including Georgia Code Section 36-33-1, or
> any amendments.

*See Gatto*, 834 S.E.2d at 628 (2019). The *Gatto* panel in the Court of Appeals

upheld the policy language against the tort plaintiffs' claims that the policy

provided sham coverage that violated public policy.[1]

*Atlantic Specialty Ins. Co. v. City of College Park*, was the next case where

these issues arose. 851 S.E.2d 189 (Ga. Ct. App. 2020). Unlike *Gatto*, but as here,

that case involved an auto case, meaning that there was a slightly different

statutory scheme at issue. In the Court of Appeals, that different framework made

all the difference. That court held that the anti-waiver provision violated Georgia's

public policy: "[T]o read the endorsements as suggested by Atlantic would

essentially grant insurers and local government entities carte blanche to contract

---

[1] The Georgia Supreme Court granted certiorari, but not on the question of the effect of this insurance language. *See Gatto v. City of Statesboro*, 860 S.E.2d 713, 716 n.2 (Ga. 2021) ("express[ing] no opinion on it").

around the legislature's clear intent to increase compensation for those who sustain injuries arising out of the use of a government motor vehicle." 851 S.E.2d at 194.

The Georgia Supreme Court reversed. 869 S.E.2d 492 (2022). In doing so, the court neither endorsed nor voided anti-waiver provisions in all municipal insurance contracts. Instead, the Georgia Supreme Court simply held that courts must give meaning to the "plain reading" of the contractual terms at issue. *Id.* at 498. The terms of the insurance contract in that case were not ambiguous. They provided, first, that:

> We have no duty to pay damages . . . on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you.

The terms further provided that:

> This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any Insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments.

*Atlantic Specialty*, 896 SE.2d at 498–99.

Insurance companies offering products to Georgia's local governments got the message after *Gatto* and *Atlantic Specialty*. Now, these municipal insurance contracts, including those issued by GIRMA, routinely contain anti-waiver language that has been vetted and approved by the highest court that can do so.

But the insurance policy in this case, sold by Lloyd's, predates these developments. Unlike the *Gatto* and *Atlantic Specialty* cases, a court's interpretation of the distinct language in this contract is unlikely to have an effect on contracts moving forward. And, as shown below, the language of this contract is significantly different than those written by Atlantic Specialty Insurance Company. Here, that different language leads to a different result.

> ### B. The contract unambiguously provides coverage in the amount of $1,800,000 for the Tort Plaintiffs' claims

The insurance contract this Court must interpret provides that the limit for this insurance is $1,800,000. *See* 1-1 at 24, 116. The only argument against the commonsense conclusion that $1,800,000 in insurance is available is derived from Endorsement 10.[2] That endorsement provides that:

> It is understood and agreed that the ASSURED shall not waive, either in the adjustment of claims or in the defense of SUIT(S) against the ASSURED, any governmental immunity, of the ASSURED, unless Underwriters and the ASSURED mutually agree, in writing, to do so.

---

[2] Indeed, Lloyd's argument about Endorsement 10 is a relatively new one in the course of this litigation. The Tort Plaintiffs sent an ante litem to East Point, that was timely conveyed to Lloyd's, on July 5, 2016. *See Davis, et al. v. Bolton, et al.*, 18EV003023 (Fulton St. Ct. June 26, 2018) (Complaint) at ¶ 19. The Tort Plaintiffs filed suit in 2018. *Id.* But Lloyd's only raised this issue in a second and a third reservation of rights letter in 2020. *See* Doc. 33-4.

The fact that this defense was not raised for several years is significant evidence that the contract's terms do not unambiguously evince a lack of waiver.

This language unambiguously does not act to prevent a waiver of sovereign immunity contemplated under O.C.G.A. § 39-92-2(d) and O.C.G.A. § 36-33-1(a). Unlike the anti-waiver language in *Gatto* and *Atlantic Specialty*, Endorsement 10 does not address these statutes.

Beyond that, the endorsement language applies only to "adjustment of claims" and the "defense of suits." It does not say *anything* about the effect of a purchased insurance contract in relation to O.C.G.A. § 39-92-2(d) and O.C.G.A. § 36-33-1(a).

Adjustment of claims refers to "[t]he act of settling or arranging, as a dispute or other difference." ADJUSTMENT, Black's Law Dictionary (11th ed. 2019). Thus, under the clear language of the contract, East Point would be in breach if it agreed at some point in time *after* the execution of the contract to waive sovereign immunity in connection with a settlement negotiation or agreement. That language unambiguously *does not* apply to bar the waiver of sovereign immunity through the procurement of insurance. It does not address the effect of purchasing insurance at all.

Similarly, "defense of SUIT(S)" refers to litigation actions like raising sovereign immunity in answers and by motion. Again, any acts in *future* litigation after the contract was entered into do not touch on the issue of the effect of the *earlier* purchase of insurance. The Tort Plaintiffs' theory is that sovereign

immunity was not waived by the defense of a suit, but rather by the purchase of insurance.

"SUIT(S)" from Endorsement 10 is capitalized because it is a defined term from the contract. The definition is as follows:

> SUIT means a civil proceeding in which injuries or damages are alleged. SUIT includes:
> (a) A arbitration proceeding in which such damages are claimed and to which the ASSURED must submit or does submit with or without the Underwriters' consent; or
> (b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which the ASSURED submits with or without the Underwriters' consent.

Doc. 1-1 at 41. This definition confirms that "defense of SUIT(S)" means litigation conduct. It does not speak to conduct related to the purchase of insurance.

Separately, the face of the language of the endorsement does not foreclose waiver of sovereign immunity by contract. Instead, it explicitly says that Lloyd's and East Point may waive sovereign immunity via a written agreement. The Tort Plaintiffs respectfully submit that the insurance contract *itself* does precisely that. Via this written instrument, East Point and Lloyd's agreed that East Point waived its sovereign immunity up to the limits of insurance. This happened automatically by operation of the fact of purchase of insurance and the applicability of O.C.G.A. § 39-92-2(d) and O.C.G.A. § 36-33-1(a).

The district court disagreed. It reasoned that Endorsement 10 "necessarily reflects an intent not to waive governmental immunity." Doc. 42 at 14:

> Otherwise, the contract must be read to mean that, simply by entering into it, the parties both intended to waive sovereign immunity up to the full amount of applicable coverage while also simultaneously conditioning coverage on non-waiver of the same. The Court does not view this as a reasonable interpretation, and it is not authorized to strain the construction of a contract so as to discover an ambiguity.

*Id.*

The district court erred. The contract's terms do not reflect a blanket ban on waiving sovereign immunity (as in the cases construing the Atlantic Specialty language). Instead, the contract's clear terms only constrain any waiver of sovereign immunity by virtue of two different, limited kinds of acts: (1) adjustment of claims and (2) defense of suits. There is no reasonable argument that a court could give meaningful effect to those words by interpreting the contract to contain a blanket anti-waiver rule.

Where Atlantic Specialty's insurance policy was explicit ("[t]his policy . . . does not constitute, nor reflect an intent . . . to waive or forego any defenses of sovereign and governmental immunity . . . ."), *see* Doc. 42 at 12, Lloyd's policy is *silent*. It says nothing about the effect of the contract itself, or about the entire universe of actions outside of adjustment and defense of suits.

The district court further stated that the Tort Plaintiffs' interpretation of Endorsement 10 would render it "meaningless." *Id*. at 15 n.9. The reasoning went that the provision would be meaningless

> with Defendant requiring that Municipal Plaintiff raise a defense of sovereign immunity to no practical avail, having already waived that defense up to the full extent of applicable limits (and, thus, Defendant's full potential indemnity obligation).

*Id.*

That's just incorrect. There are entire classes of claims that could be asserted against municipalities for which sovereign immunity exists and the purchase of insurance does nothing whatsoever to affect that immunity. *See, e.g.*, O.C.G.A. § 36-22-1(a) (providing that "A municipal corporation shall not waive its immunity by the purchase of liability insurance, *except as provided*" (emphasis added)); O.C.G.A. § 36-22-1(b) (providing that municipalities—even if they buy insurance—"shall not be liable for failure to perform or for errors in performing their legislative or judicial powers"). Further, it is still incumbent on would-be plaintiffs to send ante litem notices to cities within six months, *see* O.C.G.A. § 36-33-5, which absent a contractual provision prohibiting waiver in "adjustment of claims" or "defense of suits" *could be waived* by a city. These kinds of claims, and these kinds of actions, are what was contemplated by Endorsement 10. It is the

district court's interpretation, not the Tort Plaintiffs', that renders the actual words of Endorsement 10 nugatory.

**C.    *In the event of ambiguity, background law principles require construction in favor of coverage to the limits articulated in the policy***

If the contract does not clearly show the purchase of insurance unaffected by O.C.G.A. § 39-92-2 and O.C.G.A. § 36-33-1, at the very least there are ambiguities. The Tort Plaintiffs' submit that the above analysis is the better reading of the endorsement. But even if the Court disagrees, the above interpretation is eminently plausible, resulting in ambiguity.

In contrast to the provisions at issue in *Gatto* and *Atlantic Specialty*, here there is no language that clearly sets out that the contract does not waive sovereign immunity. In those cases, there were two sentences that just do not have anything remotely equivalent here:

1.    This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity . . . .

2.    We have no duty to pay damages . . . on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you.

The language of the contract between Lloyd's and East Point is silent on the effect of the purchase of insurance or the intent of the parties to the contract. In the

face of that silence, O.C.G.A. § 39-92-2(d) and O.C.G.A. § 36-33-1(a) provide the default rules. Those rules result in waiver up to the limits of insurance.

It is true that there is contractual language instructing East Point not to *further* waive sovereign immunity by virtue of its actions in the "adjustment of claims" and the "defense of suits." That language could apply to waiving defenses about otherwise uncovered claims, claims involving legislative or judicial negligence, or excusing untimely or improper ante litem notices. But that language says nothing about what effect the purchase of insurance has.

This interpretation of the contract can give faithful meaning to each term of the contract. Unlike in *Atlantic Specialty*, a finding of waiver does not vitiate the provision at issue because here East Point remains under an obligation not to further waive sovereign immunity separate and apart from its purchase of insurance. It must not waive sovereign immunity in trying to settle claims, and it cannot do so in litigating claims. It cannot waive sovereign immunity on a *prospective* basis by the two kinds of acts prohibited by the contract.

In contrast, in *Atlantic Specialty*, the Georgia Court of Appeal's construction of the policy provision at issue rendered it void as a matter of law. Here, this Court can be faithful to the language of the policy contract, the Georgia Supreme Court's decision in *Atlantic Specialty*, and Georgia's statutory law by finding that East Point has waived its sovereign immunity up to its $1,800,000 policy limits.

If the contractual language is not clear, it is at the very least ambiguous. One plausible reading of the contractual terms is that they precluded East Point from taking further, future acts to waive sovereign immunity in two specific and related areas: adjustment of claims and defense of suits. Because there was no language whatsoever disclaiming the background Georgia rules that the purchase of insurance waives sovereign immunity, a reasonable person would believe that those statutes applied and sovereign immunity was waived to the extent of insurance. Indeed, Lloyd's did not discover this defense—or ever argue that its indemnification obligation was anything other than $1,800,000—until years after it received notice of the claim and the claim was brought via state court suit. *See* n.2, *supra.* And East Point was blindsided by Lloyd's new construction of its policy. *See* Doc. 33-4 ¶ 34. East Point responded to the new argument, years into litigation, that Lloyd's construction "fail[ed] to provide the bargained for coverage." *Id*. The City's subjective beliefs, and Lloyd's prior interpretations, about how the contract worked are not unreasonable in light of the apparent ambiguities.

The result of any ambiguity is that the contract must be interpreted against the insurer and in favor of coverage. To the extent the contract's terms are ambiguous, there is $1,800,000 in coverage available.

### D. Regardless of Lloyd's indemnification obligations, East Point waived immunity up to $1,800,000

The Tort Plaintiffs argue that East Point knew that its purchase of insurance waived sovereign immunity up to $1,800,000 even if Lloyd's did not. The purchase of insurance acted to waive sovereign immunity by operation of law. But that purchase may not have represented a "mutual[] agree[ment]" under Endorsement 10 to waive sovereign immunity because Lloyd's may not have known Georgia law like East Point. To the extent Lloyd's exercised reasonable diligence in entering into this contract without knowledge of the effect of purchasing insurance on sovereign immunity under Georgia law, perhaps it could seek relief from its contractual obligations under the doctrine of unilateral mistake. *Decision One Mortg. Co., LLC v. Victor Warren Properties, Inc*., 696 S.E.2d 145, 148 (Ga. Ct. App. 2010).

But the purchase of insurance acted as a waiver. East Point's failure to inform Lloyd's of this effect by operation of law may have been a breach of Endorsement 10 or the City's duty to cooperate. Any such breach may impact the duties of the parties to the contract with respect to each other. But such a breach does not change the antecedent purchase of insurance and its effect that there was a waiver of sovereign immunity in the amount of $1,800,000 by automatic operation of Georgia law.

## CONCLUSION

This Court should declare that sovereign immunity has been waived in the amount of $1,800,000 for the Tort Plaintiffs' claims.

Respectfully submitted, this 10th day of July, 2024.

**Zack Greenamyre**
Zack Greenamyre
Georgia Bar No. 293002

MITCHELL SHAPIRO GREENAMYRE & FUNT LLP
881 Piedmont Avenue
Atlanta, Georgia 30309
404-812-4747
zack@michtellshapiro.com

# CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this document complies with the 13,000-word limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,181 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The motion has been prepared in proportionally spaced typeface using Microsoft Word Version 16.86 in Times New Roman, 14 point font.

**<u>Zack Greenamyre</u>**
Zack Greenamyre
Georgia Bar No. 293002

## CERTIFICATE OF SERVICE

I certify that I have served a copy of Appellants' Opening Brief by filing the document with the ECF system, which will automatically electronically serve counsel of record who are registered users of the Court's electronic-filing system.

This 10th day of July, 2024.

**<u>Zack Greenamyre</u>**
Zack Greenamyre
Georgia Bar No. 293002
